**FIRESTONE v. HALL, District Judge, et al.**

No. 14212.

Court of Civil Appeals of Texas.
Fort Worth.
Sept. 27, 1940.

O. O. Franklin, of San Angelo, for relator.

McDonald & Anderson, Bullington, Humphrey & Humphrey, Frank Ikard, Ralph P. Dickson, and James Prothro, all of Wichita Falls, and Houston McMurry, of Henrietta, for appellee.

DUNKLIN, Chief Justice.

Mrs. C. W. Firestone, a feme sole, has presented to this court her application for leave to file her petition for a writ of mandamus, to compel Honorable Earl P. Hall, Judge of the District Court of Clay County, Texas, to enter a judgment in her favor against Tom Firestone and twelve of the heirs of Lucinda Firestone, deceased, all of whom were made parties defendant to the application for leave to file. The petition for writ of mandamus is attached to the application to file, and the right asserted for that relief is predicated upon the proceedings in Cause No. 6313 in the District Court of Clay County, Texas, instituted by Carman Firestone Sims and eleven others, as heirs of Lucinda Firestone, deceased, against Tom Firestone, to set aside two certain deeds of conveyance to the mineral interest in 200 acres of land in Clay County, executed by Lucinda Firestone, as grantor, in favor of defendant, Tom Firestone, dated September 5, 1938, on three grounds: First, because said Lucinda Firestone was of unsound mind when the deed was executed; second, on the ground of undue influence exerted upon her by Tom Firestone; and, third, because no valuable consideration passed to said grantor for said conveyances.

It was further alleged by plaintiffs in their suit that oil had been discovered in the land, having a value in excess of $100,000, and all of the rents, revenues and royalties from the land had been collected and appropriated by Tom Firestone for his own use and benefit, in denial of any rights in the plaintiffs to participate therein.

The defendant, Tom Firestone, filed an answer in that suit. He specially denied that Lucinda Firestone was of unsound

mind at the time of the execution of her conveyance to him; he also denied that there was a want of consideration for the execution of the deed, coupled with the further denial of the exercise of any undue influence upon her, inducing its execution. He further alleged that in 1930 one Warren A. Boger executed his deed of conveyance to Lucinda Firestone to the mineral interest in the 200 acres, in satisfaction of an indebtedness he then owed to her, and on September 5, 1938, Lucinda Firestone, now deceased, conveyed to him, the defendant Tom Firestone, the same interest.

Tom Firestone also filed a cross action in trespass to try title against all the plaintiffs in the suit, and all other heirs of Lucinda Firestone, and also against W. A. Boger and his minor children, who are also grandchildren of Lucinda Firestone.

Further allegations were that W. A. Boger is now of unsound mind. A guardian ad litem was appointed to represent his interest and the interest of his minor children.

John Firestone, of Harris County, John S. Firestone, of Clay County, Lewis Firestone and C. W. Firestone, former husband of the plaintiff in the petition for mandamus, were all made parties defendant to that cross action, all of whom filed disclaimers of any right, title or interest in the land in controversy.

W. A. Boger, through his attorney and guardian ad litem, filed a plea of not guilty and also specially alleged that at the time of his conveyance of the mineral interest in the land to Lucinda Firestone, on December 18, 1930, he was the owner and in lawful possession of the premises, as against all other parties to the suit. In the alternative, he alleged that at the time he executed the deed of conveyance to Lucinda Firestone, he was of unsound mind, for which that deed should be held for naught. Following those pleadings, he alleged that on March 16, 1938, Lucinda Firestone had recovered judgment in trespass to try title against him and his minor children, in the District Court of Clay County, quieting title in Lucinda Firestone to the mineral interest in the land in controversy, as against any claim of interest by W. A. Boger or his minor children, but that said judgment was procured by fraud, and was therefore without force or effect.

The relator, Mrs. C. W. Firestone, is the widow of C. W. Firestone, who died during the pendency of the suit, and at the request of Tom Firestone she was also made a party defendant to Tom Firestone's cross action in trespass to try title. After she was thus made a party, she filed a plea of not guilty to that cross action and in addition thereto a plea for affirmative relief and cross action, in which she claimed an interest in the minerals upon the theory of resulting trust, based upon allegations that at the time the property was conveyed to Lucinda Firestone by W. A. Boger, on December 18, 1930, she was the owner in her own separate right of the promissory note executed by W. A. Boger and his wife, Helen Boger, and that W. A. Boger executed the deed to Lucinda Firestone in consideration of the cancellation of that note owned by relator, and other notes owing by said Boger to Lucinda Firestone; the resulting trust so claimed being based upon the allegations that the surrender of relator's note against Boger was a part of the consideration paid by him to Lucinda Firestone as purchase money for the property, and that Tom Firestone and all the other heirs of Lucinda Firestone, now deceased, took any and all interest claimed by them, chargeable with that trust, which was never repudiated by Lucinda Firestone.

The relator, Mrs. C. W. Firestone, further alleged that on August 31, 1938, Lucinda Firestone executed a deed of conveyance to the property in controversy, which was the same property which she had acquired from W. A. Boger, which deed had been duly filed for record in the Deed Records of Clay County, but that the said conveyance did not affect the rights of Mrs. C. W. Firestone owned by her by reason of the resulting trust in her favor already alleged, notwithstanding the fact that after such conveyance Tom Firestone repudiated said trust.

Following those allegations, Mrs. C. W. Firestone sought an accounting by Tom Firestone for the royalties and revenues collected by him after oil had been discovered on the property, and for recovery of a personal judgment for a large portion of those revenues, which, according to allegations in the pleading, Tom Firestone had converted to his own use, in denial of relator's claim of right to any interest therein.

In relator's application for the writ of mandamus, the purport of the pleadings above referred to are alleged, without set-

ting them out in haec verba, followed with further allegations that upon those pleadings and the evidence introduced, the case was submitted to a jury on special issues, the substance of which, together with the jury's findings thereon, were as follows:

Issue No. 1. On September 5, 1938, when Mrs. Lucinda Firestone executed to Tom Firestone a deed with warranty of title to the mineral interest in the land in controversy, she had mental capacity to execute the same.

Issue No. 2. On December 18, 1930, when Warren A. Boger executed a like deed to Mrs. Lucinda Firestone to the same property, he had sufficient mental capacity to execute the same.

Special Issue No. 3 was as follows: "Do you find from a preponderance of the evidence that the making and execution of the warranty deeds dated August 30th, 1938, from Lucinda Firestone to Tom Firestone were procured by undue influence, as undue influence has been defined above, on the part of Tom Firestone or Mrs. Lou Firestone?" The jury made no finding on that issue because of their inability to agree upon the same.

Special Issue No. 4. "Do you find from a preponderance of the evidence that C. W. (Pat) Firestone made a gift of the $1050.00 note dated June 1, 1921, to his wife, Mrs. C. W. (Pat) Firestone a few days after they were married on March 22, 1922? (Answer 'Yes' or 'No'). Answer: Yes."

Special Issue No. 5. "Do you find from a preponderance of the evidence that the $1050.00 note dated June 1, 1921, signed by Helen and W. A. Boger, payable to Corwin Firestone, was not paid by the Bogers prior to 1925? (Answer 'It was not paid' or 'It was paid', as you find the facts to be. Answer: It was not paid."

Special Issue No. 6. "Do you find from a preponderance of the evidence that th $1050.00 note dated June 1, 1921, signed by Helen and W. A. Boger, payable to Corwin Firestone, was used by Mrs. Lou Firestone as a part of the consideration for the mineral interest in the 200 acres in Clay County, Texas? (Answer 'Yes' or 'No'). Answer: Yes."

Special Issue No. 7. "Do you find from a preponderance of the evidence that Mrs. C. W. (Pat) Firestone was the owner of said $1050.00 note on December 18th, 1930? (Answer 'Yes' or 'No'). Answer: Yes."

Special Issue No. 8. "Do you find from a preponderance of the evidence that the $1050.00 note, dated June 1, 1921, signed by Helen and W. A. Boger, payable to Corwin Firestone, was used on December 18th, 1930, by Mrs. Lou Firestone as a part of the consideration for the mineral interest in the 200 acres from W. A. Boger, with the knowledge and consent of Mrs. C. W. (Pat) Firestone? (Answer 'Yes' or 'No'). Answer: Yes."

Special Issue No. 9. "Do you find from a preponderance of the evidence that at the time of the execution and delivery of the warranty deed from W. A. Boger to Mrs. Lou Firestone, on December 18, 1930, to the mineral interest to the 200 acres of land, that Mrs. Lou Firestone agreed with Mrs. Pat Firestone that she would hold in trust for her 21/67ths of the title to said minerals? (Answer 'Yes' or 'No'). Answer: Yes."

Special Issue No. 10. "Do you find from a preponderance of the evidence that Mrs. Lou Firestone, on December 18, 1930, recognized the ownership of Mrs. C. W. (Pat) Firestone, in 21/67ths of the mineral interest in the 200 acres of land? (Answer 'Yes' or 'No'). Answer: Yes."

Special Issue No. 11. "Do you find from a preponderance of the evidence that Mrs. Lou Firestone thereafter repudiated the trust interest of Mrs. C. W. Firestone (if you have found that Mrs. C. W. (Pat) Firestone has any interest in and to said property)? Answer 'Yes' or 'No'. Answer: No."

After the return of that verdict, the plaintiffs in that suit filed a motion for the court to enter an order declaring a mistrial as to plaintiff's petition, and order a retrial. That motion was made by the attorney for the plaintiffs, who also, at the same time, as attorney for Mrs. C. W. Firestone, filed a motion for judgment in her favor against Tom Firestone and each and all of the plaintiffs and cross defendants, for 21/67ths interest in and to the mineral interest, and 21/67ths of all the rents, royalties and revenues claimed by her in her pleadings against Tom Firestone, setting out in her motion the findings of the jury upon the special issues above set out.

Counsel who filed both those motions has filed here his verified statement that his action in filing both was consented to and approved by both plaintiffs and relator. However, that explanation does not change the legal effect of those motions.

Thereafter, on July 12, 1940, Judge Earl P. Hall, judge presiding, entered this judgment:

"Carman Firestone Sims et al. v. Tom Firestone. In the 97th District Court of Clay County, Texas, July 12th, A. D. 1940. Judgment.

"This the 12th day of July, A. D. 1940, in the above entitled and numbered cause, came on to be considered by the court the jury's findings in said case, and after having examined the same the court finds that the jury did not answer all the pertinent questions propounded to it by the court, and that the same results in a mistrial for the reason that all the parties to the suit are interested in the same tract of land and that only one final judgment can be entered in such cases.

"It is therefore ordered, adjudged and decreed by the court that the jury's findings result in a mistrial, and all parties are placed in status quo.

"Earl P. Hall, Judge Presiding."

No statement of the evidence introduced on the trial of that case is shown in relator's petition for the writ of mandamus.

The petition for mandamus presented here is to compel the trial judge to render judgment in favor of Mrs. C. W. Firestone against plaintiffs in that suit and all other parties thereto for an undivided 21/67ths interest in the mineral rights in controversy, and for personal judgment against Tom Firestone for $5,065.41, on account for revenues collected by him, accruing from development of the property for oil production. In support of the petition, relator has cited Art. 7386, Rev.Civ.St., reading: "Where the defendant claims the whole premises, and the plaintiff shows himself entitled to recover part, the plaintiff shall recover such part and costs."

Also this announcement by our Supreme Court, in Boone v. Hulsey, 71 Tex. 176, 9 S.W. 531: "In an action of trespass to try title against several defendants, each claiming a separate part of the land * * *, there may be more than one final judgment. It would follow that the fate of the judgment in favor of one or more of the defendants is not dependent upon the result of a motion for new trial, or to vacate the judgment made by the other defendants."

Also several other authorities of like import, including Louisiana & Texas Lumber Co. v. Southern Pine Lumber Co., Tex.

Civ.App., 216 S.W. 281, error refused; State v. Dayton Lumber Co., Tex.Civ.App., 164 S.W. 48; Cotton v. Coit, 88 Tex. 414, 31 S.W. 1061; Kansas City, M. & O. Ry. Co. v. Cave, Tex.Civ.App., 174 S.W. 872; 25 Tex.Jur., p. 467, and decisions there cited.

Those decisions have proper place in appeals from final judgments in the trial court, but they have no application to this proceeding for the writ of mandamus sought.

In the first place, it was within the discretion of the trial judge to order a mistrial; secondly, the order of mistrial was interlocutory, from which no appeal would lie, and was made long before this application for the writ of mandamus was presented here. And this attempt to require the trial judge to vacate the order already made setting aside the verdict of the jury, and render final judgment in favor of the relator, is forbidden by the familiar rule announced in 28 Tex.Jur., para. 32, p. 573, supported by numerous decisions cited: "Mandamus is not an appropriate proceeding for reviewing the action of a trial court. On the contrary, it is well settled that the writ cannot take the place, or be used to perform the office, of an appeal or writ of error, particularly when the court from which it is sought has no appellate or revisory control over the court against which relief is asked. And generally mandamus is not the proper remedy by which to correct or reverse erroneous rulings or judgments of an inferior tribunal, although in certain cases it may issue to compel an inferior court or judge to vacate or set aside a void order or judgment."

Moreover, even on appeal from a final judgment denying relator the relief sought, in the absence of a statement of facts, it could not be said that reversible error was shown, in view of certain special defenses pleaded by plaintiffs and Tom Firestone, such as pleas of limitation to the enforcement of the parol trust claimed by relator in the property; amount realized by Tom Firestone from operation of the lease for oil, and amount of offsets due him for expenses incurred, etc.; none of which was determined by the jury. Neither did relator in her application for the writ of mandamus allege that those defenses were determined by the jury or by the court. Nor did she negative the finding by the court that the jury did not answer

all the pertinent questions propounded to it by the court and that all the parties to the suit are interested in the land in controversy. Watkins v. Huff, Tex.Civ.App., 63 S.W. 922; Id., 94 Tex. 631, 64 S.W. 682; Johnson v. Elliott, Tex.Civ.App., 168 S.W. 968, writ refused; City of El Paso v. Carroll, Tex.Civ.App., 108 S.W.2d 251, writ refused; Paschall v. Renshaw, Tex. Civ.App., 142 S.W.2d 717.

Accordingly, the relator is denied permission to file her application for the writ of mandamus sought.