Argued and submitted January 7, 2019, affirmed July 8, 2020

Jennifer LYCETTE, M. D.,
*Plaintiff,*
*and*

Charles T. MATHEWS,
*Judgment Debtor-Appellant,*

*v.*

KAISER FOUNDATION HEALTH PLAN
OF THE NORTHWEST et al.,
*Defendants,*
*and*

NORTHWEST PERMANENTE, P.C.,
a professional corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
140405109; A165029

469 P3d 226

Plaintiff's counsel, Mathews, appeals from a judgment of the trial court, challenging the court's order that Mathews no longer participate in the litigation and the court's subsequent assessment of attorney fees against Mathews after the court declared a mistrial. *Held*: The court correctly ordered Mathews not to participate further in the trial after learning that Mathews's *pro hac vice* admission had expired. The court did not err in assessing attorney fees against Mathews pursuant to ORS 20.125 after determining that the mistrial had been caused by Mathews's repeated violations of the court's evidentiary rulings.

Affirmed.

Leslie M. Roberts, Judge.

Kathryn H. Clarke argued the cause and filed the briefs for appellant.

Andrea H. Thompson argued the cause for respondent. Also on the brief were Melissa J. Healy and Stoel Rives LLP.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

The issues in this case, which arise in an unusual posture, involve the trial court's ruling on a motion to revoke plaintiff's attorney's *pro hac vice* status and the court's subsequent assessment of attorney fees against plaintiff's attorney after the court declared a mistrial. As explained below, we affirm the trial court.

Plaintiff, who worked as an oncologist for respondent Northwest Permanente, is not a party to the appeal. She brought the underlying action against Northwest Permanente for statutory whistleblower retaliation, employment discrimination, and common law wrongful discharge, after Northwest Permanente eliminated plaintiff's ability to work less than full time, except in a half-time job-share. After summary judgment proceedings, several of the claims were dismissed, and the underlying case went to trial on a single allegation of retaliation for whistleblowing based on the allegation that Northwest Permanente had eliminated part-time employment in response to plaintiff's complaints about patient care. The trial of that claim ended in a mistrial on the third day of trial.[1]

The issues on appeal relate to two rulings directed to plaintiff's attorney (appellant), who is licensed to practice law in California but not in Oregon. Beginning with appellant's opening statement, the trial court was required to repeatedly admonish and warn appellant that he was violating the court's pretrial evidentiary rulings by mentioning or implying facts that the court had ruled were irrelevant because they were connected only to the claims that had been dismissed.

Appellant's conduct caused Northwest Permanente to move for a mistrial and to request a revocation of appellant's

---

[1] Before the beginning of the second trial, plaintiff and Northwest Permanente settled the underlying case. The general judgment followed a Stipulated Notice of Limited Dismissal with Prejudice in which the parties stipulated that (1) plaintiff's claims against Northwest Permanente and all other defendants would be dismissed with prejudice and "with no right of appeal," and (2) Northwest Permanente retained the right to seek and recover reasonable costs, fees, and disbursements under ORS 20.125.

*pro hac vice* admission to represent plaintiff.[2] While considering the motions, the court discovered that appellant's *pro hac vice* admission had expired 18 months before. The court therefore issued an order that appellant would no longer be allowed to participate in the trial, explaining that appellant's "behavior is incompatible with his continued involvement in this case." The court also directed that, if appellant were to subsequently pursue *pro hac vice* admission in the case before a different court, that court should be notified of its order by appellant or others who knew of it. Appellant's first assignment of error challenges that ruling.

The court then granted Northwest Permanente's motion for a mistrial and assessed attorney fees and costs against appellant under ORS 20.125. In assessing fees, the court found that, notwithstanding the court's evidentiary rulings and repeated warnings, appellant "in unmistakable fashion simply persisted regardless." The court characterized appellant's misconduct as willful and deliberate and the cause of the mistrial. Appellant's second assignment of error challenges the assessment of attorney fees.

In his first assignment, appellant contends that, in light of the fact that appellant's *pro hac vice* admission had expired at the time the court issued its order directing that appellant not participate in the case, Northwest Permanente's motion to revoke his *pro hac vice* admission was moot. Appellant argues that the motion was moot for the additional reason that the underlying case had settled by the time the court issued its order and appellant's representation would no longer be required. Given those facts, appellant contends, the court's order could have no practical effect and the matter was moot.

Northwest Permanente responds that the matter was not moot at the time of the trial court's ruling. It further contends that this court lacks jurisdiction to address the trial court's ruling, because it was an interlocutory

---

[2] *See* ORS 9.160(1) (providing that, with exceptions, only active members of the Oregon bar may "practice law" in Oregon); ORS 9.241(1) (allowing an out-of-state attorney to practice in Oregon courts only if "the attorney is associated with an active member of the Oregon State Bar"); UTCR 3.170 (requiring an out-of-state attorney to be admitted *pro hac vice*).

order that merged into the judgment in the underlying case, and the judgment in the underlying case is not appealable because the case was dismissed by stipulation. *See* ORS 19.245(3) (describing limited right to appeal stipulated judgments).[3]

As an initial matter, although the disputed order was interlocutory, appellant was not a party to the parties' stipulation, *see* ORS 19.245(3) (restricting appeal rights of "a party to a stipulated judgment"), and we conclude for that reason that appellant is not subject to the restriction that would ordinarily limit the right to appeal from a stipulated judgment. We therefore conclude that appellant can challenge the order on appeal of the judgment. *See Tavili v. Washington Mutual Bank*, 224 Or App 96, 111-12, 197 P3d 541 (2008) (addressing *pro hac vice* admission ruling on appeal of underlying judgment).

However, we readily reject appellant's contention based on mootness that the court exceeded its authority in prohibiting appellant from representing plaintiff in the underlying litigation. The issue was not moot. Although the case ultimately settled, the case was, at the time of the court's order, still in litigation, and the judgment on the parties' settlement had not been entered. In light of appellant's past conduct, it was reasonable for the court to anticipate that appellant might continue to represent plaintiff or might seek to be readmitted *pro hac vice* for retrial or other matters related to the litigation.[4] The trial court had authority in its oversight of the proceedings to order that appellant no longer represent plaintiff in the underlying litigation and to require that a court be notified of its order should appellant seek to be readmitted *pro hac vice* in the underlying proceeding. *See State v. Rogers*, 330 Or 282, 300, 4 P3d 1261

---

[3] ORS 19.245(3) provides:

"A party to a stipulated judgment may appeal from the judgment only if:

"(a) The judgment specifically provides that the party has reserved the right to appellate review of a ruling of the trial court in the cause; and

"(b) The appeal presents a justiciable controversy."

[4] Indeed, the court noted that, even after appellant was aware that his *pro hac vice* admission had expired 18 months before, he submitted a document to the court that he signed "of attorneys for plaintiff."

(2000) ("It is well established that a trial court generally possesses broad discretion to control the proceedings before it."); ORS 1.240(1) ("Every judicial officer has power *** [t]o preserve and enforce order *** in the proceedings before the judicial officer."); *see also Biegler v. Kirby*, 281 Or 423, 427, 574 P2d 1127 (1978) ("The conduct of trial is within the discretion of the trial court and an appellate court will not interfere absent an abuse of discretion."); *Sanchez v. State of Oregon*, 272 Or App 226, 228, 355 P3d 172, *rev den*, 358 Or 449 (2015) (same).

In his second assignment, appellant challenges the trial court's order requiring him to pay attorney fees under ORS 20.125, which provides:

> "In the case of a mistrial in a civil or criminal action, if the court determines that the mistrial was caused by the deliberate misconduct of an attorney, the court, upon motion by the opposing party or upon motion of the court, shall assess against the attorney causing the mistrial costs and disbursements, as defined in ORCP 68, and reasonable attorney fees incurred by the opposing party as a result of the misconduct."

Appellant contends that the court erred in assessing an attorney fee under ORS 20.125, because the mistrial was not caused by appellant's "deliberate misconduct." Rather, appellant contends, he was simply attempting to try the case within the constraints of the trial court's evidentiary rulings. Appellant contends that the evidence to which he referred during opening statements and at trial was relevant to the remaining claim to be tried.

Whether appellant engaged in "deliberate misconduct" is a factual determination that we review for any evidence. *See, e.g.*, *Shumake v. Foshee*, 197 Or App 255, 261, 105 P3d 919 (2005) (explaining that findings of fact for an enhanced prevailing party fee under ORS 20.190(3) "concerning the conduct of the parties during the course of the proceedings" are reviewed "for any evidence" in the record). We have reviewed the record and conclude that there is evidence to support the trial court's finding.

For example, the trial court directed appellant not to refer to "Kaiser" or to Northwest Permanente as an

insurance company, but in his opening statement, appellant nonetheless repeatedly took pains to mention that Northwest Permanente is part of a large group that includes Kaiser Foundation Health Plan, which he described to the jury as an insurance company. Appellant stated: "Kaiser Foundation Health Plan is the thing that you folks, if you're insured by Kaiser, pay your premiums to." In another instance, although the trial court had dismissed a claim of constructive discharge and directed appellant not to discuss evidence of constructive discharge, appellant in his opening statement nonetheless referred to the "devastating" impact of a policy change not to allow part-time positions that put plaintiff in an "impossible position." As a third example, the trial court had dismissed a claim of gender discrimination based on disparate impact and directed appellant not to address that issue, but in his opening statement, appellant referred to "three female doctors" who had been allowed to work part-time until the supervising physician changed the policy to require them to work either half-time or full time. The court had ruled that the case would not be a trial on Northwest Permanente's business practices or decisions, whether they were good or bad, and directed appellant not to introduce evidence to support plaintiff's view that Northwest Permanente had engaged in practices that put profits ahead of patients. But appellant repeatedly implied that Northwest Permanente's changes in business practices were motivated by profits at the expense of patient care.

The court provided appellant with a written summary of its rulings, and the record includes transcripts of repeated "side bar" and in-chambers conversations in which the court further explained its rulings and warned appellant against further violations, including the possibility of sanctions.[5] The court even provided a written warning of

---

[5] For example, when appellant continued to refer to Northwest Permanente as part of a group that includes an insurance company, the court admonished appellant in chambers:

"We talked at some length and I ordered directly that you not talk about insurance. I ordered that. And I don't know what it takes to communicate this to you, but I am trying to do it now *** [a]nd I also told you there would be a mistrial if you persisted ***[.] With all due respect, you must listen to orders."

consequences for violating the court's rulings.[6] Yet, as the trial court found, appellant persisted in violating them.

The trial court concluded that appellant's repeated violations had confused the jury. Indeed, the trial court received questions from the jury that suggested that confusion. Although appellant may have had a legitimate disagreement with the trial court's rulings, he was not free to ignore them. His repeated violations, in defiance of the trial court's warnings, support the trial court's finding that appellant engaged in "deliberate misconduct" that resulted in the mistrial.

ORS 20.125 required the trial court to assess against appellant "reasonable attorney fees incurred by the opposing party as a result of the misconduct." Appellant objects that the amount assessed is excessive and includes fees for services that were not incurred as a result of appellant's misconduct. We have reviewed the record and conclude that appellant has not demonstrated that the trial court abused its discretion in determining the amount of reasonable fees incurred by Northwest Permanente as a result of appellant's misconduct. *See* ORS 20.075(3) ("In any appeal from the award or denial of an attorney fee subject to this section, the court reviewing the award may not modify *** the decision of the court as to the amount of the award, except upon a finding of an abuse of discretion.").

In summary, the trial court did not err in ordering that appellant not participate any further in the litigation and in assessing attorney fees under ORS 20.125.

Affirmed.

---

[6] The court warned:

"The plaintiff must be on notice that even one such further violation—after all the court's prior rulings, and all the court's attempt to explain and make explicit its rulings—can only be viewed as deliberate misbehavior and a signal that plaintiff has no willingness to abide by the rulings and the rules of the Circuit Court of Oregon, and this court will have no choice but to declare a mistrial based on the cumulative prejudice of such willful misbehavior and the inability of plaintiff's counsel to confine tactics to those permitted by the court's orders, by the Rules of Evidence, and by the Rules of Civil Procedure."